## Collins v. Commonwealth.

(Decided October 5, 1926.)

### Appeal from Clay Circuit Court.

1. Homicide.—Evidence held sufficient to support conviction for voluntary manslaughter.
2. Criminal Law—Overruling Motion for Continuance Held Not to Prejudice Defendant, where Court Appointed Special Bailiff to Bring in Witnesses.—Overruling motion for continuance of murder case, made at April term, after indictment at January term, held not to prejudice defendant, where court appointed special bailiff to bring in witnesses.

3.  Criminal Law—Refusal to Allow Affidavit of Absent Witnesses to be Read as Testimony Held Not Abuse of Discretion, in View of Similar Testimony Admitted.—Refusal to allow affidavit to be read as testimony of five absent witnesses, who would have testified to deceased's bad reputation as dangerous man, held not abuse of discretion, where seventeen other witnesses gave same testimony.

4.  Homicide—Instruction on Self-Defense in Prosecution for Killing Deputy Sheriff Held Proper, Though Deceased Stepped Outside to Reload Pistol and was Killed on His Return.—Instruction that. if deceased deputy sheriff used no more than necessary force to overcome resistance to arrest of defendant's son, defendant should not be acquitted for shooting in defense of himself or son held proper, though deceased stepped outside to reload pistol and was killed on his return, since entire affair was one difficulty.

5.  Homicide.—Whether deceased deputy sheriff used more force than necessary or reasonably appeared to him to be necessary to overcome resistance to arrest of defendant's son held for jury.

6.  Sheriffs and Constables.—Deputy sheriff held to have duty to execute process, and, in doing so, to have all authority of law.

7.  Criminal Law.—Jury's verdict will not be disturbed unless palpably against evidence.

8.  Criminal Law.—Jury may use personal knowledge in determining. value of testimony of different witnesses in criminal case.

9.  Criminal Law.—Statements of counsel in argument will not constitute reversible error, unless substantially prejudicial to rights. of defendant.

LEWIS & LEWIS, R. W. HOUSE and F. M. FORD for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Jesse Collins and his son Willis Collins were indicted in the Clay circuit court for the murder of Sim Arnett. On the trial of Jesse Collins he was found guilty of voluntary manslaughter and his punishment was fixed at fifteen years in the penitentiary. He appeals.

Sim Arnett was a deputy sheriff of Clay county. He had in his hand for execution several bench warants for Jesse Collins and Willis Collins and also a capias on a judgment for a fine against Willis Collins. They lived just over the line in Leslie county. Arnett went to Leslie county and got a constable to go with him. He and the constable arrested them under the bench warrants and they gave bond for their appearance. He exhibited the capias, but Jesse Collins insisted that it was invalid and

was a mistake, so no arrest was made under the capias, as Arnett was outside of his jurisdiction. That afternoon while Arnett was sitting in a store on the Clay county side of the line, Jessee Collins and Willis came to the store. When Willis came in where Arnett was sitting Arnett said to him that he had the capias for him and to consider himself under arrest. Some words passed and Arnett said, "Put down that pistol," and put his hands on Willis to see if he had a pistol; he didn't find a pistol. Arnett then, with Willis at his side, started toward the door with Willis. Jesse Collins was at the counter between them and the door. As they were going to the door Arnett said to Willis, "Put up that knife." Willis said, "I have no knife." By this time Arnett had drawn his pistol and had it pointed at Willis. Jesse Collins seeing this said to Arnett, "Good Lord, you wouldn't shoot your neighbor boy?" Arnett then turned to Jesse with his pistol and said, "Put up that pistol." Jesse threw his coat back and said, "I have no pistol." About this time Arnett reached the door and said to Willis: "Come on you must go with me, I won't stand any more fooling." He then dropped his pistol to his side but had it still in his hand. At this juncture Jesse Collins drew his pistol and fired two shots at Arnett standing in the door. Both these shots missed Arnett. Arnett then raised his pistol and fired at Jesse Collins, wounding him. He then fired at Willis Collins, wounding him in one of his fingers. He then fired the other cartridges in his pistol into the store, wounding a bystander, but not striking either of the Collins. After emptying his pistol Arnett stepped out of the door and went to the side of the house and refilled his pistol with cartridges. He then returned to the door where Jesse Collins was still standing, and Willis behind him, in the room. He punched the door with his pistol several times to open it. It didn't open and he then shot a ball through it. This ball wounded Jesse Collins in the right hand; he, then, with the other hand, poked his pistol around the door and shot Arnett through the chest. Arnett fell off the platform; Collins then opened the door and fired two more shots at him lying on the ground. Collins had by this time emptied his pistol, but Willis not knowing this took the pistol from his father and ran to the door and snapped it several times at the prostrate officer. Arnett died of his wounds shortly afterwards. After the shooting Jesse Collins and Willis

Collins ran to the rear of the store, forced open a window, jumped out and made their escape. This is in substance the proof for the commonwealth.

On the other hand, Jesse Collins testified that when he appealed to Arnett not to shoot his boy for nothing, Arnett wheeled the pistol right on him and said, "If you move your hand I will shoot your heart out." He said, "Sim, I have not got a pistol," and threw his coat back; that it seemed to him Arnett was going to jump out of the door and shoot him, and when Arnett standing in the door started to raise his pistol, he then made a grab for his pistol and shot it as quickly as he could, thinking that Arnett was going to shoot him and that he shot solely in self-defense.

The proof by a number of witnesses is that there was considerable loud talking before the shooting and from all the circumstances the jury were warranted in concluding from the evidence that when Arnett got to the door and told Willis to come on he took his eyes away from Jesse and the latter, seeing that he then had the drop on Arnett, quickly drew his pistol and shot twice at Arnett when Arnett thought from what he had just said that he had no pistol.

The indictment was found at the January term. The case came on for trial at the April term. The defendant moved the court to continue the case; the motion was overruled, and of this the appellant complains. But there was no substantial error to the prejudice of the defendant, for the court appointed a special bailiff to go out and bring in the witnesses and all were brought in except five witnesses who only testified that Arnett's reputation was bad for being a dangerous man. The court did not err substantially to the prejudice of the defendant in refusing to allow the affidavit to be read as the testimony of these five men, for the defendant introduced seventeen other witnesses who so testified. The court has the discretion as to the number of character witnesses to be introduced and certainly the jury understood the facts on this question from the testimony of seventeen witnesses who were examined and cross-examined before them.

The court instructed the jury in substance that if they believed from the evidence beyond a reasonable doubt that Arnett, as deputy sheriff, and acting in good faith in discharge of his official duties, had arrested or had attempted to arrest Willis Collins under the capias,

and that Willis Collins or Jesse Collins by force resisted the arrest or attempted arrest, or by force attempted to rescue Willis Collins from the lawful custody of the officer after his arrest, then Arnett as deputy sheriff had the right to use only such force and such means as were necessary and as appeared to him in the exercise of a reasonable judgment to be necessary to overcome such forcible resistance. And if they believed from the evidence beyond a reasonable doubt that Arnett used only such force as was necessary or as appeared to him in the exercise of a reasonable judgment to be necessary to overcome such forcible resistance, then they should not acquit the defendant Jesse Collins on the defense of himself or Willis Collins. Counsel concede that this instruction would have been proper if Arnett had been killed when Jesse Collins first shot at him at the door of the store, but they insist that it was improper as applied to the shooting which occurred after the sheriff returned to the door after reloading his pistol. Counsel call this the second difficulty. But the court does not so see the transaction. It was all one difficulty from the beginning to the end. When the sheriff was going to the door with his prisoner loud words ensued, and then Jesse Collins first fired two shots at the sheriff. The sheriff emptied his pistol into the store. He then did not stand there with the empty pistol waiting for Collins to shoot him but got to one side and reloaded his pistol quickly, and came back to the door. The time that elapsed is well illustrated by the testimony of Prof. T. L. Adams, who stated that when he saw there was going to be a difficulty he left the store and started home; that the first shooting ceased when he was 125 feet from his house and the second shooting began just as he reached his house. He said that since the occurrence he had measured the distance. A man usually walks at least three miles an hour. From the circumstances it is not likely that Prof. Adams was walking unusually slowly. Going at the rate of three miles an hour a man will walk 125 feet in something less than half a minute. The sheriff's prisoner had been rescued from him. The prisoner was in the store and Jesse Collins was in the front of the store. Jesse Collins had committed, if the evidence for the commonwealth is true, a felony in shooting at the sheriff. When the sheriff returned to the door he punched the door to open it so that he could see inside. The door did not give way because somebody behind it was holding it. The

sheriff then shot through the door to make the person holding it let it go; and when he did this Jesse Collins reached his pistol around the door and shot the sheriff without the sheriff seeing him. It was all one and the same difficulty. It was the duty of the sheriff to take his prisoner, and it was a question for the jury whether, under all the circumstances, he used more force than was necessary or reasonably appeared to him to be necessary. There was proof not only that Arnett was a dangerous man but also that Jesse Collins was a dangerous man and that he had been once convicted of manslaughter. A peace officer represents the law. It is his duty to execute his process. He has in so doing all the authority of the law. It is the duty of all good citizens not only not to resist him but render him all reasonable assistance and respect. If the proof for the commonwealth is true, and the circumstances sustain it, Jesse Collins had no reason to believe that his son was in any danger at the hands of the sheriff or that he was in any danger when he fired the first two shots at him. This was in fact the beginning of the difficulty and all that followed was by reason of his thus forcibly rescuing his son from the custody of the sheriff. The instruction was therefore properly given and no substantial right of the defendant was prejudiced thereby.

It is earnestly insisted that the verdict is against the evidence. But a jury of twelve men of the neighborhood who see and hear the witnesses are better qualified to pass on such questions than this court, which has before it only a report of the testimony of the witnesses. So the rule is well settled that the verdict of the jury in such cases will not be disturbed here unless palpably against the evidence. Clearly the verdict here is not palpably against the evidence.

In his argument before the jury in a discussion of the witnesses introduced by the defense to impeach the character of the deceased for peace and quiet, counsel for the prosecution said to the jury in substance that these men were possibly known to members of the jury or some of them, and that the jury were citizens of the county and entitled to use in this connection whatever knowledge they had respecting these witnesses, and added this: "These witnesses come from that part of Clay and Leslie counties where most of the law violators come from, and they come from the moonshine sections, and Sim Arnett was the officer who was prosecuting their business."

The court overruled the defendant's objection to this statement of counsel and of this he now complains.

The jury were entitled to use their personal knowledge in determining the value of the testimony of the different witnesses. Taken as a whole the words of counsel were an appeal to the jury to consider facts which they knew. It was not a statement of something unknown to the jury, but only a reference to well understood local conditions. But, however this may be, it often happens in trials like this that in the argument of counsel the bounds of propriety are not observed, so it is a settled rule of this court not to reverse a case for statements of counsel in argument unless they are substantially prejudicial to the rights of the defendant, for the jury are sworn to try the case under the law and under the evidence and they well understand that the statements of counsel are only matters of argument.

On the whole case there is no error shown by the record to the prejudice of the defendant's substantial rights.

Judgment affirmed.