## Chaney v. Stacy.

(Decided Feb. 17, 1933.)

W. L. KASH for appellant.
HENRY L. SPENCER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment recovered by the appellee, Squire Stacy, in the Breathitt circuit court against Toney Chaney, appellant, in 'n action filed against him for breach of contract.

It appears by the record that in July, 1925, Squire Stacy, a resident of Breathitt county, Ky., and appellant, Toney Chaney, a resident of Perry county, Ky., entered into a written contract at Clayhole, Ky., which each of the parties then and there signed, whereby it was agreed that Stacy would move his sawmill and equipment over to Fish Trap branch in Perry county and there saw a boundary of timber for Chaney. The contract thus made between them provides as follows:

"This contract, Made and entered into this the 30th day of July, 1925, by and between Toney Chaney of Ary, Kentucky, and known as the party of the first part, and Squire Stacy of Clayhole, Kentucky, known as the party of the second part.

"Squire Stacy agrees to move his saw mill to the Fish Trap Branch below the mouth of Ball in Perry County, Kentucky, to saw cross ties and lumber. He agrees to have his mill moved and ready to saw cross ties and lumber by the 15th day of September, 1925.

"He agrees to saw the ties for $.20 per tie; he agrees to saw all of those ties 4 and 5. He

agrees to saw the lumber for $5.00 per thousand. He agrees to edge the lumber in good shape and stack same on yard, also agrees to stack ties according to the specifications of the Louisville and Nashville Railroad on mill yard.

"I, Toney Chaney, agree to log this mill five days per week until Stacy saws Ten Thousand ties, which is to be sawed against the 15th day of March, 1926."

Thereafter, in March, 1927, the appellee, Squire Stacy, instituted his action in the Breathitt circuit court upon this contract, seeking to recover damages of $1,216.80 against Toney Chaney for his alleged breach thereof.

In the petition, plaintiff alleged that the defendant had failed to carry out his agreement, through his failure and refusal to furnish him sufficient logs at his mill, during the time covered by their contract, as would enable him to saw the 10,000 cross ties and extra lumber therefrom as agreed; that plaintiff had, pursuant to the contract, moved his mill and equipment from Breathitt to Perry county and had been, during all the time between September, 1925, and March, 1926, as therein provided, ready, willing, and able to saw the 10,000 cross ties as agreed, had defendant observed his contract by delivering him sufficient logs from which to saw the same; that his profit realized from sawing 100 cross ties and the 2,000 feet of extra lumber secured therefrom in sawing them was $19.50 per 100 ties; that the defendant had delivered him only sufficient logs out of which to saw 3,760 ties, thus preventing his sawing the further 6,240 ties and extra lumber secured therefrom, resulting in a loss of profit to him of $19.50 per 100 ties, or a total sum of $1,216.80, for which he prayed judgment, with interest and costs.

Upon this petition, a summons and copy were issued against the defendant in Perry county, which, after being there served upon him, the defendant, without entering his appearance to the action, filed motion to quash the return on the summons, because issued to and executed upon him in Perry county.

Upon said motion to quash being sustained, the plaintiff thereafter had repeated alias summonses is-

sued to Breathitt county against the defendant, upon which no service was secured.

Thereafter, on Sunday, April 29, 1928, the service of an alias summons was secured upon defendant, while then passing through Breathitt county. Thereupon G. B. Stacy, appointed special bailiff by the sheriff to execute this summons, filed with his return of its service upon the defendant an affidavit and later a supplemental affidavit, therein stating that he, at the time of the service, believed and still believes that the said summons could not be served upon the defendant after said date, because the defendant had then run his logs down to the lower edge of Breathitt county, and was, when found, then riding through Breathitt to there join his work hands, and would have passed through and been out of Breathitt county before said day, which was Sunday, expired, when the summons could not have been served on him after said day; that the defendant lived in Perry county; that the plaintiff had been continuously trying to find him in Breathitt county in order to serve him with process since his suit was filed in September, 1927, and had before this Sunday been unable to find him in Breathitt county.

Upon the court's overruling defendant's motion to quash return of this process, made upon the ground that the summons was served upon the defendant on Sunday, the defendant, without waiving his motion to quash the return, filed general demurrer, answer, and counterclaim, by which he traversed the allegations of plaintiff's petition, and by separate paragraph affirmatively pleaded as counterclaim that the plaintiff had failed to saw the logs into lumber and ties to the amount per day agreed upon and had failed to keep the logs furnished him by defendant sawed and removed, so that he could deliver other logs to the mill, whereby the defendant, due to plaintiff's failure to observe his contract, was forced to stop his teams and work hands at least twenty days during the life of the contract at a loss of $25 per day, which damaged him in the total sum of $500; and further alleged that plaintiff had also violated his contract in failing to stack said ties or to cut said lumber according to his contract, resulting in defendant's further damage of $100. Wherefore he prayed that plaintiff's petition be dismissed and that he recover upon his counterclaim the sum of $600 against plaintiff.

Upon the trial of the issues thus joined, the evidence heard as to Chaney's alleged failure to furnish Stacy with sufficient logs to run the mill was in sharp conflict, and the jury, after hearing the proof and receiving the instructions of the court, returned its verdict disallowing the appellant's counterclaim and finding for the appellee, Stacy, in the sum of $150.

Complaining of this verdict and judgment thereon, the defendant filed motion and grounds for a new trial, which, being overruled, the defendant, Chaney, has appealed, seeking its reversal upon the grounds urged that: (1) The court permitted the plaintiff to introduce incompetent evidence over the objections of the defendant and further that the court refused to allow competent evidence offered by defendant to be introduced; (2) the verdict of the jury is contrary to the law and evidence and is not supported by the law or the evidence; (3) the court failed and refused to peremptorily instruct the jury to find for the defendant; (4) the verdict of the jury is the result of passion and prejudice on the part of the jury and was not rendered according to the law or evidence in the case; and (5) the court failed to sustain defendant's motion to quash the return of the summons, same having been executed on Sunday, and therefore the court had no jurisdiction of the defendant or of this cause.

In his appeal of the case, appellant, however, has chosen by counsel in his brief to insist upon and argue only three of these grounds assigned by him as erroneous, and we will therefore treat the others as now abandoned and turn our attention to the consideration of the contentions as now made by him, which are as follows: (1) That the verdict of the jury was flagrantly against the evidence; (2) that a summons served on Sunday will not support a verdict and judgment unless it clearly and conclusively appears from the testimony that it could not have been served after that day; and (3) that the court erred in refusing to give the instructions Nos. 1, 2, and 3 offered by appellant and in giving, upon its own motion, instructions Nos. 1 and 2.

Appellant, in support of his first contention, urges that the contract stipulated that Chaney was to furnish the logs to the mill and that Stacy was to do the sawing as the logs were delivered him and that the evidence shows that Chaney did substantially perform his con-

tract as agreed, and which also discloses that Stacy did not perform his portion of the contract, partly because of sickness in his family, and partly again because the machinery of his mill was defective, forcing him to shut down for long periods of time, for which reasons, he argues, Stacy did not carry out his contract according to its terms, and therefore the verdict of the jury awarding damages to him was not sustained by the evidence and should not have been allowed to stand, the law being that the verdict of the jury will be set aside, even though there is some evidence to support it, where the verdict is palpably and flagrantly against the evidence or is the result of passion or prejudice on the part of the jury. However we do not so appraise the weight and character of the proof heard for plaintiff.

This evidence was, first, the testimony of the plaintiff to the effect that he had as agreed moved his mill and set it up in Perry county and was there ready to saw ties and lumber as provided by the contract, and had in fact moved it even several days before the contract date called for so doing, from which time he ran his mill until about the 1st of November, when he had a breakdown; that he then moved in a larger boiler and mill, with which he was ready to renew his work of sawing in the early part of December; that at this time defendant, Chaney, was using his teams for hauling river logs and ignoring his agreement to supply him sawing timber; that, during the latter part of the contract period, Chaney furnished him only enough logs for about two days' sawing a week; that, upon finishing the sawing of the logs delivered him, he would blow his whistle for other logs and send word to Chaney by his drivers and employees to furnish him more logs, but that such calls went unheeded and ignored by Chaney. Further, he states that he could have sawed more than the contracted amount of 10,000 ties during the contract time, even excluding that lost by his boiler breakdown, could he have operated his mill the contract time by appellant's furnishing him therefor and as agreed enough logs to run five days a week. He further states that some thirty days before the contract time expired the defendant moved his teams away from the job and refused to furnish him any logs for sawing.

Several other witnesses for plaintiff, Green Stacy, Jason Williams, George Campbell, and Willie Fugate,

some of whom worked both for the plaintiff and defendant in the logging and milling job during this time, testified that they were frequently at the mill site when there were no logs in the millyard and the mill was forced to shut down on that account, some of them further stating that Chaney had told them, on one or more occasions, while they were working for him, that there was more money in hauling river logs than tie logs, as thus explaining why his teams and hands were then engaged in hauling river logs rather than tie logs to the mill for plaintiff, as he had agreed.

We are, from this brief review of the evidence offered by plaintiff, in support of his contention that appellant breached his contract with him, of the opinion that it was quite sufficient and of such substance and probative value as to well sustain and support the jury's verdict in so finding, and from which it follows that appellant's contention, that the verdict based thereon was the result of passion and prejudice as flagrantly against the evidence, is without merit and untenable, when considered under the rule that the jury's verdict will not be disturbed upon the plea that it is not sustained by the evidence, unless it is clearly and palpably against the weight of the evidence, nor will the verdict be disturbed simply because the jury credited one set of witnesses rather than another or because the verdict is not sustained by a preponderance of the evidence. Civil Code of Practice, sec. 340, subsec. 6; Shepherd v. Commonwealth, 236 Ky. 292, 33 S. W. (2d) 4; Barton v. Commonwealth, 240 Ky. 786, 43 S. W. (2d) 55; Warner v. Commonwealth, 241 Ky. 118, 43 S. W. (2d) 524; White v. Commonwealth, 225 Ky. 596, 9 S. W. (2d) 720; Kidd v. Commonwealth, 218 Ky. 153, 291 S. W. 4; Collins v. Commonwealth, 218 Ky. 189, 291 S. W. 1; Salyers v. Commonwealth, 229 Ky. 153, 16 S. W. (2d) 509; Cheatham v. Commonwealth, 228 Ky. 765, 15 S. W. (2d) 525.

We will now consider appellant's next contention, which is that the court committed reversible error in overruling appellant's motion to quash the return of the summons executed on him in Breathitt county on the Sunday afternoon, in April, 1928.

It is shown by the record that, before this case came on for trial on its merits, the appellant, Toney Chaney, entered his motion to quash the return of this

summons, dated April 24, 1928, with return date showing execution upon Sunday, April 29, 1928; that, in support of his motion he testified that he was, on the Sunday in question, passing through Breathitt county to Estill county, from whence he returned through Breathitt county the following day; that he was engaged in the logging and other business, by reason of which he frequently was in Breathitt county; that the summons herein served upon him on Sunday, April 29, by the special bailiff could have been as well served upon him the next day, when he returned to his home in Perry county through Breathitt county.

The appellee, Squire Stacy, and his son G. V. Stacy, in testifying against the motion to quash, stated that, upon the filing of this suit, summons had been issued to Perry county, appellant's home, and there served upon the appellant, who appeared by attorney in the Breathitt court, and moved to quash the return of the summons thus served in Perry county on him, which was done; thereupon, during many months, other alias summonses were issued in the case and placed with the sheriff of Breathitt county for service upon the appellant without ever procuring service thereof; that in their judgment the appellant was avoiding the officers of Breathitt county seeking to serve process upon him; that because of this belief, upon their learning of appellant's expected coming through Breathitt county on Sunday, April 29, they procured an alias summons on April 24, 1929, for appellant, and that G. V. Stacy was appointed special bailiff by the sheriff of Breathitt county to make service and return of this process upon appellant; that on Sunday, April 29, 1929, the said Stacy found the appellant when riding through Breathitt county to Jackson, and believing that, in order to serve the process, it was necessary to then make service of it on him, did accordingly offer appellant a copy of same and explained to him what it was; that the said Stacy did further make with his return an affidavit therewith and with leave of court filed a further affidavit, therein further reciting grounds for his belief that the summons could not have been served on the defendant after the Sunday in question, thus making it then necessary, at that time, though on Sunday, to execute the summons, if service of process was to be made or at all secured upon the defendant in Breathitt county.

At the conclusion of all the evidence heard upon the motion to quash the return, the court ordered that the same be overruled.

Appellant very earnestly and strongly insists that in so ruling, the court has committed a reversible error. We conclude, however, that this further contention of appellant is also not to be sustained.

Section 665 of the Civil Code of Practice provides: "A summons, subpœna, notice or order for a provisional remedy may be issued, given or executed on a holiday or Sunday, if the officer or person having notice or process believe, or if the plaintiff or some other person make affidavit to the effect that the affiant believes, that the notice can not be given, or that the process can not be executed, after such holiday or Sunday."

In the instant case, we are of the opinion that the officer brought his action, in making Sunday service of the process upon the appellant, one clearly within the exception expressly provided by the quoted Code section, supra, through the showing made by his affidavit, filed with the return, that he then believed that this process if not then served could not have been executed upon the defendant after this Sunday.

This court had before it the question of the validity of the issuing and service of a warrant made on Sunday, in the case of Moore v. Hagan, 2 Duv. 437, in which the court, there construing the then applicable Code provision providing for the issuing and service of processes upon holidays, there contended to include Sunday, as such, said:

"The Christian Sabbath is wisely recognized by law as 'a day of rest,' to be devoted to religious contemplation and observance, free from secular disturbance. And, to aid in securing it against desecration, the Revised Statutes of Kentucky (p. 347, sec. 12, Stanton's R. I., vol. 2) provides, that 'No process or notice, on which any legal proceedings are to be founded, shall be executed on Sunday; the execution of either on that day shall be void.'

"The 732d section of the Civil Code provides, that 'It shall be no objection to any process, writ

or summons, affiadvit, order for a provisional remedy, that it was issued, made, or dated on a holiday.' And 733d section provides, that 'A summons or order for a provisional remedy may be issued on a holiday where an affidavit of the plaintiff, or some other person, is made to the effect that, unless it is issued on that day, there is reasonable cause to believe that it cannot be executed.'

"The holiday here contemplated is not the Christian Sabbath. * * * As early as the reign of Edward the VI England established holidays by law; but, in the statutory enumeration of such free days, Sunday was not included. The laws of England do not, therefore, recognize Sunday as a holiday. * * *

"In some of the American States there is statutory permission of service of process in special cases on the Sabbath; but, in every instance, 'Sunday,' and not 'holiday,' is the word used. Before the adoption of our Code, legal process on Sunday was unlawful, but as lawful on a holiday as on any other secular day. In prohibiting it also on holidays, unless the required affidavit shall have been made, why did the Code leave out Sunday? If it contemplated the legalization of process on the Sabbath also, why did not the Code expressly, as statutes in some other States, add 'and Sunday?' If the codifiers had intended to relax the statute consecrating the Sabbath, they ought to, and, as we must presume, would, have said so expressly."

The court here held that this Code provision authorizing service of process upon a holiday would not legalize such service when made upon Sunday as embraced within the permissive Code provision, in that Sunday was not properly to be included within the designation of "a holiday," and that, had the codifiers so intended, they would have added to such Code provision the further words "and Sunday."

In harmony and keeping with this construction of the then Code provisions, 733-735, the later present Code provision, 665, supra, has made and now contains this express addition to its wording, by having expressly added thereto, after the words, "given or executed on a holiday," the further words "or Sunday,"

thus bringing it within the class of those states referred to in the quoted opinion as giving statutory permission for the service of process in the named special case on the Sabbath. Also, in the somewhat later case of Paul v. Bruce & Co., 9 Bush, 317, the court, in passing upon a motion to quash a return made by a sheriff of summons, served on a holiday, said:

"In the present case the only evidence was that the action was instituted, the summons issued and served on this holiday.

"The burden of proof then rested upon the party plaintiff in the action to show the necessity for its service on that day, as provided by the section of the Code referred to, in order to entitle him to his judgment. This the appellees failed to do, and no judgment should have been rendered."

In the instant case, we are of the opinion that the evidence introduced by the appellee against appellant's motion to quash was amply sufficient to sustain the burden of bringing the complained of Sunday service within the authority and justification provided by the quoted section 665 of the Code.

As to appellant's further objection or criticism urged against instructions Nos. 1 and 2 given by the court, it is sufficient answer thereto that we are of the opinion that the complained of instructions, as given, properly and clearly submitted to the jury the applicable law of the case for its instruction in the finding of its verdict.

The judgment of the lower court being in accord with the views herein expressed, it is affirmed.